The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. On August 10, 1989, the parties entered into a Form 21 Agreement, which was approved by the Industrial Commission on September 19, 1989 and that Form 21 Agreement is incorporated herein by reference. Pursuant to the Form 21 Agreement, plaintiff, on May 18, 1989, sustained an injury by accident arising out of and in the course of his employment, specifically, a burn on his right hand. At that time, plaintiff's average weekly wage was $244.80, yielding a compensation rate of $163.21. In addition, defendant is self-insured for workers' compensation with Consolidated Risk Management Services as the administrator of the self-insured plan.
2. On April 3, 1990, the parties entered into a Form 26 Agreement, providing for additional temporary total disability compensation for the plaintiff. This Form 26 Agreement was approved by the Industrial Commission on May 1, 1990.
* * * * * * * * * * * * *
The Full Commission adopt as their own all findings of fact findings of fact found by the Deputy Commissioner, as follows:
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. Plaintiff was employed as a cook with defendant-employer. On May 18, 1989, plaintiff, then age 37, was injured at work while removing a roast from an oven when the oven door swung shut. The plaintiff instinctively tried to stop the door from closing on him by striking it with the side of his hand. Plaintiff suffered a burn to his right hand. Plaintiff was initially examined by a nurse at the nursing home where he was employed and then was sent to the emergency room at the University Memorial Hospital where he was examined.
2. Emergency room records indicate that the plaintiff had a first degree burn to his right hand and a second degree burn to his left forearm.
3. The swelling on plaintiff's right hand worsened and he was referred to Dr. Hunstad, a plastic surgeon. Dr. Hunstad first saw plaintiff on July 18, 1989. Dr. Hunstad noted that plaintiff's swelling was dramatic in the hypothenal area of the his right hand. X-rays were taken and an antibiotic was prescribed. The swelling did not improve and a doppler study was done. The doppler was not inclusive and surgery was therefore scheduled. Dr. Hunstad thought that the surgery would reveal a hematoma that was causing the swelling. On August 14, 1989, Dr. Hunstad operated on plaintiff's hand and removed an epidermal inclusion cyst. Plaintiff continued to experience difficulties with his hand and when seen by Dr. Hunstad on August 25, 1989, Dr. Hunstad noted a redness in the hand and prescribed an antibiotic ointment. Plaintiff's healing problems continued and when seen by Dr. Hunstad on August 29, 1989, plaintiff's hand was still swollen. Dr. Hunstad noted that as of September 11, 1989 there was still a very tender spot in the middle of the hand. At this time, there also appeared to be herpetic whitlow on plaintiff's left hand. On September 14, 1989, Dr. Hunstad noted pustules on the hypothenar eminence and some of them were purulent. Plaintiff was immediately referred to Dr. Weingarten, an infectious disease specialist, and was seen on that same day.
4. Dr. Weingarten noted that the plaintiff had developed blistering of both hands since his hand surgery and in the last 40 hours he had also developed swelling of the left hand. Dr. Weingarten obtained a culture which grew out staphyloccus aureus. Plaintiff was thereafter treated with antibiotics and Prednisone.
5. In late 1989, plaintiff developed malignant hypertension, hypertensive retinopathy and nephrotic syndrome. For treatment of this kidney problem, plaintiff saw Dr. Murray Turner, a Board certified nephrologist. A kidney biopsy was done and a diagnosis of post-infectious glomerulonephritis was made. Plaintiff subsequently developed kidney failure as a consequence of the post-infectious glomerulonephritis. The infection that caused plaintiff's kidney failure was a post-operative staph infection that resulted from the August 14, 1989 hand surgery according to Dr. Murray Turner. In November, 1991, a kidney transplant was done. Plaintiff continues to have problems related to this transplant and continues to undergo medical treatment, although for a period of time he returned to work.
6. By letter dated March 26, 1990 from Dr. Murray W. Turner to Ms. Pam Robertson, the claims service supervisor for the agent administering the defendant's self-insured workers' compensation plan, Dr. Turner noted that the plaintiff's post-infectious glomerulonephritis is the result of an infection resulting from the burn on the plaintiff's hand. As a result of this information, the plaintiff and defendant entered into a Form 26, Supplemental Memorandum of Agreement as to the Payment of Compensation, on April 3, 1990. This Form 26 Agreement was approved by the Industrial Commission on May 1, 1990. Pursuant to this Agreement, defendant-employer began paying additional temporary total disability compensation to the plaintiff because of his disability resulting from his kidney problem.
Subsequent to the filing of the Form 26 Agreement, defendant-employer, through the efforts of Consolidated Risk Management Services, obtained medical opinions that plaintiff's kidney failure was not causally related to the burn to his hand and they terminated payment of plaintiff's compensation. However, compensation was reinstated and defendant then filed an application with the Industrial Commission to stop the payment of compensation. The request to terminate compensation was denied by the Industrial Commission. The issue at this hearing was whether or not the Form 26 Agreement entered into by the parties on April 3, 1990 should be set aside because of a mutual mistake.
7. Defendant offered the testimony of five medical experts. Dr. Joseph P. Hunstad opined that there was no evidence of infection to plaintiff's right hand following surgery and that the plaintiff's glomerulonephritis was not due to infection of any type secondary to surgery. Dr. Edward Lipford opined that a first degree burn could not have caused the epidural inclusion cyst that the plaintiff had, and he was of the opinion that there was nothing to suggest that the cyst could have been the site of infection. Dr. Donald Fraser, a Board certified dermatologist, opined that plaintiff's cyst did not develop from the first degree burn. He also opined that the herpetic whitlow that developed on plaintiff's left hand could provide a source for staph infection. Dr. James Horton, an expert in the field of infectious disease, concluded that the plaintiff's glomerulonephritis was not related to the burn injury but could have resulted from the infection to his left hand. Further, he found no relationship between the cellulitis on plaintiff's left hand and the burn to the right hand, and he felt that a strep infection through the cellulitis on plaintiff's left hand could have caused plaintiff's glomerulonephritis. Finally, Dr. Hugh D. Peterson, Director of the North Carolina Burn Center, testified that there was no evidence of wound infection secondary to plaintiff's first degree burn or subsequent surgery. His opinion was that the epidermal inclusion cyst was present before plaintiff's injury and was not related in any way to the burn. Likewise, he opined that plaintiff's glomerulonephritis had nothing to do with his burn or surgery to remove the cyst.
8. There is no evidence that the Form 26 Agreement entered by the parties on April 3, 1990 and approved by the Industrial Commission on May 1, 1990 was entered as a result of any fraud, misrepresentation, undue influence on behalf of any of the parties and the only suggestion is that the Agreement was entered into by mutual mistake.
9. The Form 26 Agreement entered into by the parties was signed by the plaintiff after Dr. Turner had informed him that complication with his burn had caused his kidney failure. Defendant likewise entered into the Form 26 Agreement after Dr. Turner's opinion had been brought to their attention by the plaintiff and they, the defendants, determined by personally contacting Dr. Turner, that it was Dr. Turner's opinion that there was a causal link between the burn to plaintiff's hand and his kidney failure.
10. The plaintiff contended at the time the Form 26 Agreement was signed that there was a causal link between his compensable injury by accident, namely, the burn to his hand, and his subsequent kidney problem and resulting disability. Plaintiff continues to make that contention and does not now contend nor admit that any mistake in that diagnosis has been made. Plaintiff relies upon the testimony of Dr. Turner.
11. Defendant now has obtained medical opinions from medical experts supportive of a contrary view with respect to the causal link between plaintiff's current kidney failure and his burn to his hand, although those medical experts are merely expressing opinions and have only reviewed the records in this case. There is no evidence of a mistake on behalf of the defendant at the time they entered into the Form 26 Agreement other than the contention itself that they relied upon the opinion of Dr. Turner and entered into the Form 26 Agreement in reliance upon his opinion whereas now, almost two years after the plaintiff's injury by accident, they obtained medical opinion contrary to that of Dr. Turner's.
* * * * * * * * * * * * * *
Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident on May 18, 1989, which arose in the course and scope of his employment with defendant-employer, and as a result of which plaintiff and his employer entered into an Agreement for Compensation for Disability, namely, a Form 21 Agreement, which was approved by the Industrial Commission on September 19, 1989. Subsequently, the parties freely and voluntarily and without fraud, misrepresentation, undue influence or mutual mistake on behalf of either party entered into a From 26 Agreement whereby defendant agreed to pay additional temporary total disability compensation to the plaintiff pursuant to a Form 26 Agreement dated April 3, 1990 and approved by the Industrial Commission on May 1, 1990. This Form 26 Agreement was based upon disability that the plaintiff now sustained as a result of a post-infectious glomerulonephritis. Pursuant to this Form 26 Agreement, plaintiff is entitled to continuing temporary total disability compensation until he is no longer disabled and is able to return to work.
2. North Carolina General Statute 97-17 provides in pertinent part: ". . . No party to any agreement for compensation approved by the Industrial Commission shall thereafter be heard to deny the truth of the matter therein set forth, unless it shall be made to appear to the satisfaction of the Commission that there has been an error due to fraud, misrepresentation, undue influence or mutual mistake, in which event the Industrial Commission may set aside such agreement."
There is no evidence, contention, or finding in this case that the Agreement, Industrial Commission Form 26, was obtained by fraud, misrepresentation or undue influence. Plaintiff contends that there was no mutual mistake of fact in the entering of the settlement agreement and defendant, on the other hand, argues that the mutual mistake was the erroneous belief that the plaintiff's glomerulonephritis was causally linked to plaintiff's burn on his hand.
Defendant may have entered into the Form 26 Agreement on the "mistaken belief" that the plaintiff's glomerulonephritis was causally linked to the burn he sustained to his hand but that was not the motivation for the plaintiff's entering into the Agreement. The evidentiary question of whether or not plaintiff's disability caused by his kidney failure was causally linked to the burn on his hand has not been decided by the Industrial Commission. The issue of whether the plaintiff's kidney failure is compensable as being causally related to the burn on his hand was decided by the parties when they entered into the Form 26 Agreement on April 3, 1990. The parties entered into the Form 26 Agreement which can only be set aside upon a showing of fraud, misrepresentation, undue influence or mutual mistake, none of which appear in this case. Ralph Mullinax v. Fieldcrest Cannon,Inc., 100 N.C. App,. 248, 395 S.E.2d 160 (1990).
* * * * * * * * * * * * * *
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. The Form 26 Agreement entered into by the parties on May 1, 1990 shall remain in full force and effect unless voluntarily amended by the parties and until further orders of the Industrial Commission.
(It is hereby noted that a Second or Supplemental Memorandum Agreement as to Payment of Compensation, Form 26, was entered by the parties subsequent to the hearing on January 30, 1992 and that Form 26 Agreement was approved by the Industrial Commission February 27, 1992. That Form 26 Agreement provides for the payment of temporary partial disability compensation. The undersigned, based upon the information contained in that Form 26 Agreement, assumes that the plaintiff has returned to work and is now receiving payment for temporary partial disability.)
2. A reasonable attorney's fee in the amount of 25 percent of the compensation received or to be received by the plaintiff as a result of this Opinion and Award is hereby approved and allowed for plaintiff's counsel. Said amount shall be deducted from the compensation payable to plaintiff and shall be paid directly to said counsel by the payment of every fourth check of compensation.
3. Defendant shall pay the costs.
This the __________ day of ________________________, 1994.
 S/ _________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ _____________ JAMES J. BOOKER COMMISSIONER
S/ __________________ W. JOEY BARNES DEPUTY COMMISSIONER
JHB/nwm